**ALLIANCE FOR THE WILD ROCKIES, Plaintiff,**

v.

**Ryan ZINKE, in his official capacity as Secretary of the Department of Interior; Daniel Ashe, in his official capacity as Director of the U.S. Fish & Wildlife Service, Defendants.**

and

**Bonner County, Idaho; Boundary County, Idaho; and Lincoln County, Montana, Defendant–Intervenors.**

CV 16–21–M–DLC

United States District Court,
D. Montana,
Missoula Division.

Signed 08/22/2017

Rebecca Kay Smith, Timothy M. Bechtold, Bechtold Law Firm, Missoula, MT, for Plaintiff.

Rickey Doyle Turner, Jr., U.S. Department of Justice, Denver, CO, for Defendants.

John G. Connors, R. Allan Payne, Doney Crowley P.C., Helena, MT, for Defendant-Intervenors.

ORDER

Dana L. Christensen, Chief Judge

Plaintiff Alliance for the Wild Rockies ("Alliance") moves for summary judgment arguing that Defendants Secretary Ryan Zinke and Director Daniel Ashe (collectively "Defendants")[1] violated the Endangered Species Act ("ESA") when the U.S. Fish and Wildlife Service ("FWS") determined that the Cabinet-Yaak grizzly bear was not warranted for listing as an endangered species. Defendants, as well Defendant-Intervenors Bonner County, Idaho, Boundary County, Idaho, and Lincoln County, Montana, oppose Alliance's motion and have filed cross-motions for summary judgment. As discussed below, the Court will grant Alliance's motion and deny the cross-motions for summary judgment of Defendants and Defendant-Intervenors.

BACKGROUND[2]

In 1975, the grizzly bear (*Ursus arctos horribilis*) was listed as a "threatened" species in the lower 48 states. This designation was implemented after the dire decline of the species over the course of the last century where total grizzly bear numbers dropped from 50,000 in 1880 to fewer than 1,000 in the mid-1970s. The great bear's historic range had also shrunk from populations in the Midwest and California and into Mexico, to just four states today.[3]

The bear's drastic decline was caused by habitant destruction, habitat modification, range curtailment, and human-caused mortality. Based upon these numbers, the FWS approved a Grizzly Bear Recovery Plan which was subsequently revised in 1993 identifying six grizzly recovery zones with parameters for recovery. These zones are: the Cabinet-Yaak Ecosystem (the "Cabinet-Yaak"); the Selkirk Ecosystem, the Yellowstone Ecosystem, the Northern Continental Divide Ecosystem, the Bitterroot Ecosystem, and the North Cascades Ecosystem. The Cabinet-Yaak population is the subject of this litigation.

A. The Cabinet-Yaak

The Cabinet-Yaak recovery zone is located on the border between Montana and Idaho, with 90% of the zone on three national forests: the Kootenai National Forest, the Idaho Panhandle National Forest, and the Lolo National Forest. Estimates of the total number of grizzlies in the Cabinet-Yaak vary, but it is undisputed that less than 50 individual bears can be found in the recovery zone. The population of bears in the Cabinet-Yaak can be geographically divided into two areas: a population in the south of the zone in the Cabinet Mountains ("Cabinet population"), and a population in the north located near the Yaak River ("Yaak population").

The population trends for the bears in these two areas is disputed by the parties. Nevertheless, in 1988, the Cabinet population was estimated to be 15 bears or fewer. The Yaak population at the time was unknown. As of 2014, the total population for Cabinet-Yaak was estimated to be be-

---

1. Defendants Secretary Ryan Zinke and Director Daniel Ashe are being prosecuted in their official capacities as Secretary of the Department of Interior and Director of the U.S. Fish & Wildlife Service, respectively.

2. This background section is derived from Alliance's Amended Complaint, the parties' Statements of Disputed Facts, and the briefs in support of their respective motions.

3. These states are Montana, Idaho, Wyoming, and Washington.

tween 42 and 49 individual bears in the recovery zone. These numbers are roughly equally divided between the Cabinet population and the Yaak population. Though these figures represent a pattern of modest improvement for the total number of bears, the parties agree that the Cabinet–Yaak grizzly's recovery is not complete.

The parties dispute whether the Cabinet–Yaak grizzly is currently experiencing improving population trends. Nevertheless, it is undisputed that as of 2013, the total grizzly bear population in the Cabinet–Yaak was not stable. Indeed, at a minimum, 100 bears are necessary for the recovery of the Cabinet–Yaak grizzly and the current number of bears is less than half that number. However, though the total number of bears is less than ideal, the FWS contends that current figures show an improving trend since 2006 and a stable trend since 2013. As a result, the FWS asserts that the Cabinet–Yaak is no longer warranted for listing as an endangered species. Specifically, the FWS has found that the Cabinet–Yaak population is "no longer on the brink of extinction." 79 Fed. Reg. 72450, 72488 (December 5, 2014).

In contrast, Alliance contends that these numbers demonstrate that the Cabinet–Yaak population is warranted for listing because it is currently not viable or close to recovery. Alliance states that various factors are hindering the recovery of this population, including natural and human-caused threats. For example, grizzly bears have a limited reproductive capacity which precludes a rapid increase in population. Due to the relatively late age when grizzles first reproduce, their small litter size, and long intervals between litters, even in optimum conditions a single female grizzly is likely to produce less than four other females in her lifetime. Combined with other factors such as population isolation and displacement from human caused activities, such as mining and logging, Alli-

ance contends that the Cabinet–Yaak grizzly faces a unique set of challenges which warrant their listing. Alliance also argues that the human-caused mortality rate for the Cabinet–Yaak grizzly is significantly contributing to the bear's lack of stability. For example, from 1999 to 2006, 18 bear deaths were known to be directly caused by humans. Further, from 2007 to 2014, at least 17 bears were killed by humans. Alliance contends that this mortality rate, among the other factors mentioned, warrants listing of the Cabinet–Yaak grizzly.

**B. The ESA and the Listing Process**

The ESA requires the Secretary of the Interior to determine, "solely on the basis of the best scientific and commercial data available," whether any species should be listed as "endangered" or as "threatened." 16 U.S.C. § 1533(a)(1), (b)(1)(A). The ESA defines an "endangered species" as "any species which is in danger of extinction throughout all or a significant portion of its range ...." 16 U.S.C. § 1532(6). A "threatened species" is "any species which is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id.* at § 1532(20). The Secretary, through the FWS, is statutorily required to consider various factors in its listing decision, including: (1) "the present or threatened destruction, modification, or curtailment of its habitat or range; (2) "overutilization for commercial, recreational, scientific, or educational purposes"; (3) "disease or predation"; (4) "the inadequacy of existing regulatory mechanisms"; or (5) "other natural or manmade factors affecting its continued existence." 16 U.S.C. § 1533(a)(1)(A)–(E).

A species' listing determination is resolved through a petition process. Essentially, any "interested person" may petition to add or remove a species from the endangered species list. 16 U.S.C.

§ 1533(b)(3)(A). After receiving the petition, if the Secretary concludes that it "presents substantial scientific or commercial information indicating that the petitioned action may be warranted ... the Secretary shall promptly commence a review of the status of the species concerned." *Id.* This status review must then be completed in 12 months ("12 Month Review") and the Secretary must issue one of the three findings: (1) the listing of the species is not warranted; (2) the listing is warranted; or (3) the listing is "warranted but precluded." [4] *Id.* at § 1533(b)(3)(B)(i)–(iii).

A "warranted but precluded" finding recognizes that a species qualifies for protection under the ESA, but whose listing is "precluded by pending proposals and expeditious progress must be being made to list qualified species and delist those for whom ESA's protections are no longer necessary." *Wildwest Inst. v. Kurth*, 855 F.3d 995, 1005 (9th Cir. 2017) (quoting *Ctr. for Biological Diversity v. Kempthorne*, 466 F.3d 1098, 1102 (9th Cir. 2006); *see also* 16 U.S.C. § 1533(b)(3)(B)(iii). If, under this third option, the Secretary finds that the listing of the species is precluded, the FWS then treats the petition as one that has been resubmitted through the initial listing process. *Id.* at § 1533(b)(3)(C)(i). The Secretary is then required to implement a system to monitor any species whose listing has been determined to be warranted but precluded. *Id.* at § 1533(b)(3)(C)(iii).

Implementation of this system requires the FWS to fashion "a ranking system to assist in the identification of species that should receive priority review." 16 U.S.C.

§ 1533(h)(3). This system assigns a Listing Priority Number "LPN" between 1 (highest priority, i.e., an "emergency") and 12 (lowest priority) based on three criteria: (1) magnitude of threats; (2) immediacy of threats; and (3) taxonomic status. *Wildwest Inst.*, 855 F.3d 995 at 1007. Under the priority ranking system, a species' level is assigned according to its taxonomic status and is assigned under one of three categories: (1) monotypic genus (species that are the sole members of a genus); (2) full species (for genera that have more than one species); and (3) subspecies or distinct population segments of a vertebrate species. As a distinct population segment, the Cabinet–Yaak grizzly may be listed under one of four LPNs: 3, 6, 9, or 12.

## C. Listing of the Cabinet–Yaak Grizzly

Following the grizzly bear's initial listing as a "threatened species" subsequent to the passage of the ESA, from 1986 to 2007 the FWS received and reviewed 10 petitions requesting a change in the status of the bear. In 1993, the FWS determined that the grizzly population in the Cabinet–Yaak ecosystem warranted listing as an endangered species, and issued a finding that the listing was warranted but precluded by work on other species having a higher priority for listing. This finding was repeatedly reaffirmed by the FWS over the course of the next two decades.

In 2007, the FWS initiated its "5–year review" to evaluate the status of grizzly bears in the lower 48 States, and in particular, the population in the Cabinet–Yaak ecosystem. This review, published in 2011,

---

4. Specifically, this listing determination recognizes that "[t]he petitioned action is warranted, but that—(I) the immediate proposal and timely promulgation of a final regulation implementing the petitioned action ... is precluded by pending proposals to determine whether any species is an endangered species or a threatened species, and (II) expeditious progress is being made to add qualified species to either [the threatened species list or endangered species list] and to remove from such lists species for which the protections of this chapter are no longer necessary." 16 U.S.C. § 1533(b)(3)(B)(iii).

concluded that the Cabinet–Yaak population was warranted but precluded for uplisting and assigned the bear a LPN of 3, the highest priority number available for a subspecies or distinct population segment of a species. This number was assigned as a result of the bear's "small population size, isolation, and excessive human-caused mortality." (Doc. 27 at 19.) The report highlighted that, due to the population's small numbers, Cabinet–Yaak bears are particularly "vulnerable to stochastic (i.e., random) events." (*Id.* at 17.) Specifically, fatalities caused by human hands—2.3 per year between 1999 and 2008—represented a primary threat to the bear's recovery. The 5–year review also highlighted the isolation of the Cabinet–Yaak population, both within the region and within the ecosystem itself. For example, though bears in the northern Yaak section showed signs of intermingling with grizzly populations in Canada, there was no known movement of bears between the Yaak and Cabinet sections.

In November of 2013, the FWS again concluded that listing the Cabinet–Yaak grizzly as endangered was warranted but precluded by work on other species. Reiterating the threats made in its 5–year review, the FWS found that the population was still subject to "high magnitude threats that are ongoing, thus imminent." 78 Fed. Reg. 70104, 70151 (November 22, 2013). As a result of these ongoing threats, FWS continued to assign a LPN of 3 to the Cabinet–Yaak population. The FWS would change its assessment of the bear the following year.

In early 2014, discussions within the FWS indicted that it was considering revising the Cabinet–Yaak population's LPN to a higher number. In an email from January 2014, Chris Servheen, a FWS's Grizzly Bear Recovery Coordinator in Montana, said: "I don't think we are as yet justified in making a statement about

the [Cabinet–Yaak] not being warranted for endangered status but we are making progress in that direction." (Doc. 27 at 39–40.) This assessment was echoed by FWS Biologist Wayne Kasworm in another January 2014 email:

I just ran the trend numbers for 2013 in the [Cabinet–Yaak] and it appears we have climbed out of the hole we were in and reached a stable point estimate of 1.0002 (CI 0.90621.0754). This is good news, but may not rise to the level of declaring victory. We will need to continue ... reducing unnecessary forms of human caused mortality. If this were the Selkirks I would unequivocally say we do not need to go to endangered status. In the [Cabinet–Yaak] I am not sure the data allows us to make a good argument to support it."

(*Id.* at 40–11.) Another FWS Biologist, Rebecca Shoemaker, clarified that these improvements should lead to a higher LPN for the population:

After a call w/ Wayne this morning and in light of recent improvements in the imminence of threats, we think the [Cabinet–Yaak ecosystem] would probably not meet the definition of LPN 3 anymore. I've incorporated language from Wayne into the attached draft response letter saying this and we expect to hash this out more formally in the annual [Candidate Notice of Review].

(*Id.* at 41.) Indeed, in an internal assessment dated April 1, 2014, the FWS found that it would change the Cabinet–Yaak's LPN from 3 to 6:

The uplisting of the Cabinet–Yaak grizzly bear population from threatened to endangered now has a listing priority number of 6. This priority number indicates the magnitude of threat is high but those threats are not imminent .... Magnitude: The magnitude of threats is considered high because these popula-

tions have not experienced the same increases in numbers and distribution as other, healthier grizzly bear populations in the lower 48 States, even though similar management actions have been implemented.

(*Id.* at 39.) This determination was again reaffirmed in a June 2014 assessment, which found:

Despite ... improvements, the [Cabinet–Yaak ecosystem] still faces threats that put the population at significant risk. The extremely small population size (< 50 individuals) makes this population very vulnerable to human-caused mortality. While the population trend has changed from declining to stable, it will take several years of a positive trend to provide us with assurance the population is truly recovering. Additionally, until the Record of Decision for motorized access management is more fully implemented, habitat destruction and modification remains a threat.

(*Id.* at 43.) This June 2014 assessment thus concluded, albeit preliminarily, that the Cabinet–Yaak "population is still warranted for uplisting to endangered status but the LPN shall be reduced from 3 to 6." (*Id.* at 44.)

However, in July of 2014, internal documents within the FWS indicate that the agency decided that the Cabinet–Yaak grizzly was no longer warranted for listing. It appears that the agency came to this conclusion after applying the "Polar Bear rule"[5] to the question of whether the species should be listed as a threatened or endangered species. For example, FWS Biologist Wayne Kasworm states that: "After my discussion with [Assistant ESA Chief] Seth [Willey] about the Polar bear Rule I have reconsidered and offer the following draft as a proposal for the Cabinet–Yaak." (*Id.* at 45.) This proposal stated:

In a December 22, 2010 memorandum, FWS provided supplemental information for the determination of Threatened or Endangered status under the Endangered Species Act (FWS 2010). The document clarifies Service policy in regards to the statutory phrase "in danger of extinction" as used in a listing with Endangered status. This policy recognizes this phrase as meaning "currently on the brink of extinction in the wild". We are now applying this new policy to Endangered listing determinations .... In applying this policy to the best available biological data, we conclude that the Cabinet–Yaak grizzly bear population is not currently on the brink of extinction and is no longer warranted for Endangered status and should continue to be listed as Threatened.

(*Id.* at 46.)

This proposal found that the Cabinet–Yaak grizzly is not currently "on the brink of extinction" for several reasons, including (1) an improving population trend between 2006 and 2013; (2) the population had reached a stable trend for the period between 1983 and 2013; (3) human caused mortality of female bears had declined; and (4) a successful bear transplant augmentation plan for the Cabinet population. Under this augmentation plan, 15 bears were introduced into this section between 1990 and 2013. It was also noted that two of these transplant bears had successfully reproduced and yielded offspring which had also successfully procreated.

In response to this revised proposal, Assistant ESA Chief Seth Willey replied, "I very much appreciate that you gave this is a hard look. The only change I would

---

**5.** FWS's discussion of the "Polar Bear Rule" is an apparent reference to "Polar Bear Memorandum," a document discussed *infra*.

propose is that we not refer to this as a new policy or new interpretation." (*Id.* at 47.) As discussed in greater detail, the FWS maintains that application of "on the brink of extinction in the wild" standard, the so-called "new policy" referred to by Mr. Kasworm, is merely the agency's long-standing interpretation of the statutory phrase "in danger of extinction." *See* 16 U.S.C. § 1532(6).

On December 5, 2015, the FWS officially[6] reversed its decades long listing trend and published its finding that listing the Cabinet–Yaak population as an endangered species was no longer warranted. The agency found that:

> Since 1992, we have received and reviewed six petitions requesting a change in status for the Cabinet–Yaak grizzly bear population .... In response to these petitions, we previously determined that grizzly bears in the Cabinet–Yaak ecosystem warranted a change to endangered status. However, for several years, this population's status has been improving. The population trend has now changed from declining to stable. The U.S. Forest Service has established regulatory mechanisms for motorized access management and attractant storage, and researchers have documented some movement between the Cabinet–Yaak and other populations in Canada. Together, these improvements have reduced the threats to this population. Until the Record of Decision for motorized access management is more fully implemented and we have several more years of a positive population trend, we remain cautious in our interpretation. We conclude that the Cabinet–Yaak ecosystem population continues to face several

threats, and retain this populations's threatened status, but we no longer find that the population is warranted for uplisting to endangered status (i.e., "on the brink of extinction").

79 Fed. Reg. at 72488.

Following publication of this finding, Alliance filed suit in this Court requesting judicial review. Alliance asserts that the FWS acted arbitrarily and abused its discretion when it concluded that the Cabinet–Yaak grizzly bear is not warranted for listing as an endangered species. Alliance seeks a declaration that FWS's determination was unlawful under the ESA and requests that the Court reverse and remand this decision for further agency review.

Defendants contend that Alliance misrepresents the agency's reasoned determinations with cherry-picked statements and misapplication of the FWS's longstanding positions on listing decisions. Essentially, Defendants counter that Alliance's lawsuit is nothing more than a disagreement with the FWS's listing decision—which does not invalidate a reasonable agency decision under federal law. Defendants contend that the FWS's listing determination was reasoned and supported by the record. Accordingly, Defendants request that the Court reject Alliance's arguments and defer to the agency's findings.

Subsequent to the initiation of the Complaint, Defendant–Intervenors Bonner County, Idaho, Boundary County, Idaho, and Lincoln County, Montana (collectively, the "Counties") jointly moved for intervener status in this matter.[7] The Counties, all located within the Cabinet–Yaak ecosystem, contend that reversing the FWS's decision would have a direct impact on

---

**6.** Defendants state that the decision to remove the warranted-but-precluded designation was agreed upon by agency staff in July of 2014, approved at the regional level in August of 2014, and approved in Washington, D.C. in November of 2014.

**7.** The Cabinet–Yaak ecosystem encompasses 1,200,000 acres in Lincoln County, 260,000 acres in Boundary County, and 250,000 acres in Bonner County.

their interests. After hearing the arguments of the parties, the Court determined that the Counties would be granted intervener status and allowed them to participate in summary judgment briefing. To that end, the parties, including the Counties, have filed cross-motions for summary judgment. Because the Counties' motion implicates the Court's jurisdiction to hear this matter, it will be addressed first.

## LEGAL STANDARD

A party is entitled to summary judgment if it can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Only disputes over facts that might affect the outcome of the lawsuit will preclude entry of summary judgment; factual disputes that are irrelevant or unnecessary to the outcome are not considered. *Id.* at 248, 106 S.Ct. 2505. "[S]ummary judgment is an appropriate mechanism for deciding the legal question of whether [an] agency could reasonably have found the facts as it did" based upon the "evidence in the administrative record." *City & Cnty. of San Francisco v. United States*, 130 F.3d 873, 877 (9th Cir. 1997) (citations omitted).

■■■ Claims brought pursuant to the ESA are reviewed under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 et seq. *See Native Ecosystems Council v. Dombeck*, 304 F.3d 886, 891 (9th Cir. 2002). Under the APA, a "reviewing court shall hold unlawful and set aside agency action ... found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The Court's scope of

review is narrow, and the Court should "not substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983).

## ANALYSIS

### I. Standing

Defendant–Intervenors contend that Alliance lacks standing to seek judicial review of the FWS's listing decision. The Counties bring two arguments in support: (1) Alliance did not actually file any of the petitions requesting that the Cabinet–Yaak grizzly be listed as an endangered species; and (2) Alliance has failed to present a justiciable controversy because it was not injured by a change in the bear's status.

### 1. Non–Petitioner Standing

■■■ The Counties first argue that Alliance lacks standing because it did not file any of the petitions requesting that the population be listed as endangered. These petitions spurred the FWS's review of the species and ultimately resulted in the agency's "not warranted" determination. The Counties contend that because Alliance was not one of the actual petitioners in these requests, the Court should find that the organization cannot participate in this matter. The Court disagrees.

The ESA provides that following the FWS's determination as to a species' endangered or threatened status, "[a]ny negative finding ... shall be subject to judicial review." 16 U.S.C. § 1533(b)(3)(C)(ii). Specifically, "any person may commence a civil suit on his own behalf ... to enjoin ... the United States and any other governmental instrumentality or agency (to the extent permitted by the eleventh amendment to the Constitution), who is alleged to be in violation of any provision of [the ESA]." 16 U.S.C. 1540(g)(1)(A).[8] The government

---

8. This provision also allows any person to file a civil suit "against the Secretary [of the

must be given 60 days written notice of the suit prior to its commencement. 16 U.S.C. 1540(g)(2)(A)(i).

Here, it is undisputed that Alliance provided the FWS with 60 days notice before bringing this suit. Further, the organization's Complaint alleges that the Secretary violated the ESA when it determined that the Cabinet–Yaak grizzly was not warranted for listing. Thus, under a plain reading of the ESA, the statutory requirements for bringing a citizen suit have been met. Alliance's non-petitioner status is irrelevant.

### 2. Injury-in-Fact

The Counties also contend that Alliance has failed to invoke this Court's Article III jurisdiction because the organization was not harmed by the FWS's determination that the bear was not warranted for listing as an endangered species. Principally, the Counties assert that the change in the species' designation from "warranted but precluded" to "not warranted" merely altered the administrative status of the species and did not reduce or change the protections the population receives under the ESA. Thus, any injury suffered by Alliance, the Countries argue, is speculative and hypothetical, and fails to articulate an actual and concrete injury.

Alliance, as an environmental organization litigating on behalf of its members, has Article III standing to sue if its members have suffered an injury-in-fact as a result of the FWS's not warranted for listing determination. See Hunt v. Washington State Apple Advertising Com'n, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). This injury must be "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc., 528 U.S. 167,

180–181, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). The injury must also be "fairly traceable to the challenged action of the defendant," and "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. In environmental cases, the injury-in-fact prong "is satisfied if an individual adequately shows that she has an aesthetic or recreational interest in a particular place, or animal, or plant species and that ... interest is impaired by a defendant's conduct. Ecological Rights Found. v. P. Lumber Co., 230 F.3d 1141, 1147 (9th Cir. 2000).

Here, Alliance has submitted an affidavit from Michael Garrity, Executive Director of Alliance, which states that he and Alliance's other members either live in the Cabinet–Yaak ecosystem, or visit it frequently, to pursue their shared interest "in looking for, viewing, and studying a healthy viable population of Cabinet–Yaak grizzly bears in both the Cabinet Mountains portion of the range, as well as the Yaak River portion of the range." (Doc. 21–9 at 3.) The affidavit further affirms that the FWS's determination to not list the Cabinet–Yaak grizzly harms its members' interests in the survival and recovery of Cabinet–Yaak grizzly because the bear would not be eligible for increased protections available for endangered species, instead of the limited protections afforded to threatened species.

Despite this affidavit, the Counties maintain that Alliance and its members have not suffered an cognizable injury as a result of the FWS's listing decision because the Cabinet–Yaak grizzly was never actually listed as endangered and, thus,

Interior] where there is alleged a failure of the Secretary to perform any act or duty under section 1533 of this title which is not discretionary with the Secretary." 16 U.S.C. § 1540(g)(1)(C).

was never afforded the protections available under this designation. Instead, the species' designation of "warranted but precluded" provided no protections to the bear. *See Wildwest Inst.*, 855 F.3d at 1005 ("A 'warranted but precluded' finding recognizes that a species qualifies for protection under the ESA, but does not actually give any protection to the species.") (citation omitted). Consequently, because no actual protections exist under this designation, the Counties assert, none were lost when the FWS determined that the bear was not warranted for listing as an endangered species. *See also Wildwest Inst.*, 855 F.3d at 1011–1012 ("In many ways, a 'warranted but precluded' determination is a 'toothless finding.'") (quoting *W. Watersheds Project v. U.S. Fish and Wildlife Serv.*, 4:10–CV–229–BLW, 2012 WL 369168, at *1 (D. Idaho Feb. 2, 2012)).

Contrary to the Counties' argument, however, the interests of Alliance and its members in seeing and studying the bear were harmed because the Cabinet–Yaak grizzly is no longer eligible to receive the protections afforded to species listed as endangered. Stated another way, under a designation of warranted but precluded, the Cabinet–Yaak grizzly was set to be listed as endangered species and receive the protections afforded under this designation—as soon as the necessary financial resources were available to the FWS. As a result of the not warranted determination, the Cabinet–Yaak grizzly is currently no longer on the list to receive the enhanced protections and benefits provided to an endangered species. To apply a crude analogy, the Counties' argument is akin to the contention that a person on the organ transplant list has not suffered an injury merely because she was kicked off the list.

Accordingly, the Court disagrees with the Counties' argument and finds that the Cabinet–Yaak grizzly's removal from the warranted but precluded list has caused a concrete and particularized injury to the interests of Alliance and its members. Further, this injury is not speculative because a favorable outcome in this matter would result in the vacatur of the not warranted determination and the reinstatement of the FWS's 2013 warranted but precluded finding. Under a warranted but precluded finding, as discussed, the Cabinet–Yaak grizzly would again be eligible to receive enhanced protections under the ESA once the funding or resources become available. The Court thus concludes that Alliance has standing in this matter.

## II. The FWS's Not Warranted Determination

The Court will next address the merits of the parties arguments, i.e., whether the FWS violated the ESA when it determined that the Cabinet–Yaak grizzly bear was not warranted for listing as an endangered species. However, before examining the parties' cross-motions for summary judgment in detail, the Court must first rule on Alliance's motion to supplement and/or complete the administrative record.

### A. Motion to Supplement the Record

Alliance moves to supplement and complete the administrative record with eight exhibits. These exhibits are: (Exhibit 1) a 2014 Cabinet–Yaak grizzly bear monitoring report; (Exhibit 2) a 2016 scientific article, "Density, Distribution, and Genetic Structure of Grizzly Bears in the Cabinet–Yaak Ecosystem"; (Exhibit 3) a summer 2015 Cabinet–Yaak grizzly bear monitoring report; (Exhibit 4) a 2015 "Accomplishment Report" concerning the Cabinet–Yaak grizzly bear; (Exhibit 5) a 2015 report on Cabinet–Yaak grizzly bear mortalities; (Exhibit 6) a paragraph from the 2014 Federal Register with track changes; (Exhibit 7) a May 2015 response from the FWS concerning Alliance's 60 day notice under the ESA; and (Exhibit 8) a Febru-

ary 2015 response from the FWS concerning Alliance's 60 day notice under the ESA. The Court first notes that it will grant the motion with respect to Exhibit 6 (2014 Federal Register Paragraph with track changes) because Defendants do not oppose the motion as it pertains to this exhibit.

Generally, "courts reviewing an agency decision are limited to the administrative record." *Lands Council v. Powell*, 395 F.3d 1019, 1029 (9th Cir. 2005) (citing *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–744, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985)). Nevertheless, there are four exceptions to this general rule: "(1) if admission is necessary to determine whether the agency has considered all relevant factors and has explained its decision[;] (2) if the agency has relied on documents not in the record[;] (3) when supplementing the record is necessary to explain technical terms or complex subject matter[;] or (4) when plaintiffs make a showing of agency bad faith." *Lands Council*, 395 F.3d at 1030 (citing *Southwest Ctr. for Biological Diversity v. United States Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996) (internal quotation and punctuation marks omitted).

Alliance asserts that exhibits 1, 2, 3, 4, 5, 7, and 8 are admissible under the first exception described in *Lands Council*, i.e., "if admission is necessary to determine whether the agency has considered all relevant factors and has explained its decision." 395 F.3d at 1030. However, this exception is only permitted for "information available at the time, not post-decisional information." *Tri–Valley CAREs v. U.S. Dept. of Energy*, 671 F.3d 1113, 1130 (9th Cir. 2012) (quoting *Rock Creek Alliance v. U.S. Fish & Wildlife Serv.*, 390 F.Supp.2d 993, 1002 (D. Mont. 2005)). Because these exhibits were created after the FWS's December 5, 2014 "not warranted" finding, supplementation under this excep-

tion is not permitted. Thus, the motion to supplement exhibits 1, 2, 3, 4, 5, 7, and 8 is denied as to the first exception.

Alliance also contends that supplementation of exhibits 1 and 2 is permitted under the third exception, "when supplementing the record is necessary to explain technical terms or complex subject matter." *Lands Council*, 395 F.3d at 1030. Specifically, Alliance contends that supplementation of exhibit 1, a 2014 monitoring report, "will provide context for—and explain the reasoning behind—the agency's statements that the population is increasing." (Doc. 17 at 6.) However, as argued by Defendants, numerous documents in the record already address the reasoning behind the FWS's determination that the population is increasing. (*See* Doc. 18 at 14 (listing numerous documents in the administrative record which discuss bear mortalities and population trends).) Further, Alliance argues that exhibit 2, a scientific article discussing a DNA based estimate of the bear's population, should also be supplemented into the record to help explain the bear's numbers. Nevertheless, as noted by Defendants, a draft of this study is already in the record and supplementation is not necessary. The Court agrees. Accordingly, Alliance's motion to supplement exhibits 1 and 2 under the third exception is denied.

Next, Alliance requests that exhibits 7 and 8 should be placed into the record under the second exception noted in *Lands Council*, i.e., "if the agency has relied on documents not in the record." 395 F.3d at 1030. Alliance argues that exhibits 7 and 8, the May 2015 and February 2015 responses from the FWS concerning Alliance's 60 day notice of intent to sue, provide insight into the FWS's rationale for issuing its not warranted decision. However, Alliance fails to explain how the FWS relied on these documents for its De-

cember 2014 decision. Further, the administrative record sufficiently explains the reasoning behind the FWS's not warranted decision. The Court will thus deny the motion to supplement exhibits 7 and 8 under the third exception.

██ Lastly, Alliance argues that the Court should take judicial notice of exhibits 1, 2, 3, 4, 5, 7, and 8 because they are publically available government documents. Under the Federal Rules of Evidence, a court may take judicial notice of a fact if "is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see also Daniels–Hall v. Natl. Educ. Ass'n*, 629 F.3d 992, 998–999 (9th Cir. 2010) (a court may take judicial notice under Rule 201 of publically available government documents). Because Defendants do not dispute the accuracy of these exhibits, the Court will take judicial notice of the government documents. However, the Court is mindful that it cannot use the facts contained in these exhibits to second guess the FWS's 2014 listing decision. *See Ocean Advocates v. U.S. Army Corps of Engineers*, 402 F.3d 846, 858 (9th Cir. 2005) (under APA review, a court "cannot substitute" its judgment for that of the agency) (citation omitted).

### B. Five Factor Test Under the ESA

██ Alliance first argues that Defendants violated the ESA by failing to address its "Five Factor test" for listing determinations. As mentioned above, the ESA requires the FWS to "determine whether any species is an endangered species or a threatened species because of any of the following factors: (A) the present or threatened destruction, modification, or curtailment of its habitat or range; (B) overutilization for commercial, recreational, scientific, or educational purposes; (C) disease or predation; (D) the inadequacy of existing regulatory mechanisms; or (E) other natural or manmade factors affecting its continued existence." 16 U.S.C. § 1533(a)(1). Alliance maintains that because the FWS's December 2014 not warranted determination failed to address these factors, both the public and the Court do not have a meaningful basis to review the agency's determination. Alliance further argues that the listing determination provides no citation to any scientific evidence supporting the agency's conclusion. This lack of citation, Alliance asserts, thus violates the ESA's requirement that all listing decisions be based on "the best scientific and commercial data available." 16 U.S.C. § 1533(b)(1)(A); *see also* 50 C.F.R. § 424.11(b) (the FWS shall make all listing determinations "solely on the basis of the best available scientific and commercial information regarding a species' status"). The Court disagrees.

██ Under the ESA, when the FWS issues a warranted but precluded finding, it "shall promptly publish such finding in the Federal Register, together with a description and evaluation of the reasons and data on which the finding is based." 16 U.S.C. § 1533(b)(3)(B)(iii). However, as is here, when the FWS issues a "not warranted" decision, it is only required to "promptly publish such finding in the Federal Register." 16 U.S.C. § 1533(b)(3)(B)(i). Under the plain language of the statute, the FWS complied with the ESA's publishing requirements for issuing a not warranted determination. Further, as noted by Defendants, the FWS conducted its five factor analysis in the species assessment form and included it in the administrative record. AR000050–73. This analysis satisfies the ESA's mandate that all listing decisions may undergo judicial review to ensure that the decision is based on "the best scientific and commercial data available." 16 U.S.C.

§ 1533(b)(1)(A). Thus, the Court rejects Alliance's first argument that Defendants violated the ESA.

## C. "On the Brink of Extinction" Interpretation

As discussed, the FWS determined that the Cabinet–Yaak grizzly was not warranted for listing as an endangered species because it was not "on the brink of extinction." 79 Fed. Reg. at 72488. Alliance asserts that application of "on the brink of extinction" standard is a new policy interpreting the ESA's definition of "endangered," i.e., "any species which is danger of extinction throughout all or a significant portion of its range ...." 16 U.S.C. § 1532(6). Alliance asserts that this policy was first promulgated as a result of litigation surrounding a 2008 FWS decision to not list the polar bear as an endangered species. *See In re Polar Bear Endangered Species Act Listing & 4(d) Rule Litig.*, 748 F.Supp.2d 19 (D.D.C. 2010) (hereafter "*In re Polar Bear I*").

There, the FWS interpreted the term "endangered species" to mean the species "must be in imminent danger of extinction" to be listed as endangered. *In re Polar Bear I*, 748 F.Supp.2d at 22. The district court determined that the FWS failed to adequately explain the legal basis for this interpretation and remanded to allow the service to provide a supplemental explanation for its interpretation of "endangered." *Id.* Following remand, the FWS issued a supplemental explanation ("Polar Bear Memorandum") stating that the phrase "in danger of extinction" generally "describes a species that is *currently on the brink of extinction in the wild.*" *In re Polar Bear Endangered Species Act Listing and 4(d) R. Litig.*, 794 F.Supp.2d 65, 83 (D.D.C. 2011) (hereafter "*In re Po-lar Bear II* ") (emphasis in original). Based upon the FWS's thorough explanation for its listing decision in the Polar Bear Memorandum, the district court afforded *Chevron*[9] deference to the decision and found that the service "articulated a rational basis for its determination that the polar bear was not in danger of extinction at the time of listing ...." *In re Polar Bear II*, 794 F.Supp.2d at 112. However, the district court noted that the FWS's Polar Bear Memorandum emphasized that it was "not intended to set forth a new statement of agency policy or a new 'rule' pursuant to the APA, nor does the agency intend to adopt independent, broad-based criteria for defining the statutory term 'in danger of extinction.' " *Id.* at 82–83.

Despite the FWS's assertion in the Polar Bear Memorandum that it was not promulgating a new policy of interpreting "in danger of extinction" to mean "on the brink of extinction," Alliance contends that the FWS's 2014 determination that the Cabinet–Yaak grizzly bear was not warranted for listing turned on this interpretation. Consequently, Alliance maintains that this interpretation now represents a change in FWS policy and the 2014 determination should only be afforded *Skidmore*[10] deference, a less deferential standard.

In response, Defendants stress that the FWS's application of the "on the brink of extinction" standard as discussed in the Polar Bear Memorandum did not represent a new policy or regulation by the FWS. Instead, Defendants argue that application of the standard announced in the Polar Bear Memorandum "is merely a summary of the agency's long-standing interpretation of the statutory phrase 'in danger of extinction' as meaning 'on the

---

**9.** *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

**10.** *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944).

brink of extinction' and how it has analyzed and applied this interpretation over the last 40 years." (Doc. 29 at 19.) Accordingly, Defendants argue, because this interpretation of endangered is a permissible construction of "in danger of extinction," as recognized by the *In re Polar Bear II* court, this Court should apply *Chevron* deference and defer to the FWS's interpretation of the term.

### 1. Level of Deference

 There are no hard or fast rules for determining the level of deference a court should apply to an agency's construction of a statute. Rather, the Court's first step is to determine if Congress has clearly spoken to the issue. *N.W. Ecosystem All. v. U.S. Fish and Wildlife Serv.*, 475 F.3d 1136, 1141 (9th Cir. 2007) (citing *Chevron*, 467 U.S. at 842–844, 104 S.Ct. 2778). If the statute is unambiguous, the Court " 'must give effect to the unambiguously expressed intent of Congress' regardless of the agency's view." *N.W. Ecosystem All.*, 475 F.3d at 1141 (quoting *Chevron*, 467 U.S. at 843, 104 S.Ct. 2778). However, if the statute is ambiguous, the Court "must determine how much deference to give to the administrative interpretation." *Id.* Here, the parties do not dispute that "on the brink of extinction" is an ambiguous phrase. Thus, the Court must decide whether the FWS's interpretation of this phrase is entitled to the deference applied in *Chevron* or *Skidmore. Id.*

 "*Chevron* deference applies 'when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority.' " *Id.* (quoting *United States v. Mead Corp.*, 533 U.S. 218, 226–227, 121 S.Ct. 2164, 150 L.Ed.2d 292

(2001)). Generally, "Congress contemplates administrative action with the effect of law when it provides for a relatively formal administrative procedure tending to foster the fairness and deliberation that should underlie a pronouncement of such force." *Mead Corp.*, 533 U.S. at 230, 121 S.Ct. 2164 (citation omitted). Consequently, the vast majority of cases which have applied *Chevron* deference have done so on the heels of agency notice-and-comment rulemaking or following some formal adjudication process. *Id.*; *see also N.W. Ecosystem All.*, 475 F.3d at 1142 (FWS's construction of the term "distinct population segment" was entitled to *Chevron* deference following "robust" adjudication process). Nevertheless, just because an agency's interpretation of statute did not undergo public notice-and-comment does not mean the interpretation should not be afforded *Chevron* deference. *Mead Corp.*, 533 U.S. at 230, 121 S.Ct. 2164; *see also N.W. Ecosystem All.*, 475 F.3d at 1142. Thus, as is the situation here, the fact that the FWS's "on the brink of extinction" interpretation did not undergo a notice-and-comment period does not automatically rule out the application of *Chevron* deference.[11]

 However, an agencies' interpretation of a statute should only be afforded *Chevron* deference if the administrative action is intended to have the force of law. *N.W. Ecosystem All.*, 475 F.3d at 1142 (FWS policy reviewed under *Chevron* deference because there was no evidence that the agency treated the policy "as anything other than legally binding"). Here, both the Polar Bear Memorandum and the FWS have represented that this interpretation is not to be treated as a formal binding interpretation of the ESA and, thus, does not have the force of law.

---

11. The FWS concedes that its "on the brink of extinction" interpretation did not undergo a formal notice-and-comment period. (Doc. 26 at 20.)

As discussed, the Polar Bear Memorandum expressly states that its interpretation of "in danger of extinction" to mean "on the brink of extinction" was limited only to the litigation surrounding the listing of the polar bear and was "not intended to set forth a new statement of agency policy or a new 'rule' pursuant to the APA, nor does the agency intend to adopt independent, broad-based criteria for defining the statutory term 'in danger of extinction.'" *In re Polar Bear II*, 794 F.Supp.2d 65, 82–83 (discussing the limited nature of the Polar Bear Memorandum). Additionally, Defendants in this case stress that the interpretation announced in the Polar Bear Memorandum does not create any new rules or policies and, instead, summarizes the agency's past practices and is meant to act as a guide. (Doc. 29 at 20 (describing how the FWS relied on the Polar Bear Memorandum "in this case for guidance and explanation of how the agency interpreted endangered and how it has applied this interpretation in the past to specific facts").) [12]

Accordingly, because the FWS only considers this interpretation for guidance and not as a binding formal pronouncement with the force of law, the Court will review this interpretation under *Skidmore*. *See Alaska Oil and Gas Assn. v. Pritzker*, 840 F.3d 671, 681 (9th Cir. 2016) ("An internal guidance document that reflects an agency's 'body of experience and informed judgment,' but that is not promulgated through rulemaking, is typically afforded *Skidmore* deference.").

## 2. *Skidmore* Deference

■■■ Under *Skidmore*, "[t]he weight of [an agency interpretation] will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all of those factors which give it power to persuade, if lacking power to control." *Presidio Historical Ass'n v. Presidio Tr.*, 811 F.3d 1154, 1166 (9th Cir. 2016) (quoting *Skidmore*, 323 U.S. at 140, 65 S.Ct. 161).

■■■ Here, the agency's interpretation of "in danger of extinction" to mean "on the brink of extinction" is not consistent with the agency's prior interpretation of "endangered species" under the ESA. Aside from *In re Polar Bear II*, Defendants fail to cite to any other case where this interpretation was put forth by the FWS. Indeed, even in that decision, as discussed above, the district court emphasized the limited nature of this interpretation and its narrow applicability. *See In re Polar Bear II*, 794 F.Supp.2d 65, 82–83. Further, though Defendants provide citations to several Federal Register determinations where the phrase "on the brink of extinction" was used, none of these decisions state that the agency was adopting a new interpretation of "in danger of extinction" to mean "on the brink of extinction." (*See* Doc. 40 at 10–11 (listing several Federal Register decisions where the phrase was mentioned).) Additionally, only one of the Federal Register decisions cited by Defendants found that a species was not warranted for listing because it was not "on the brink of extinction." 69 Fed. Reg. 21425, 21428 (April 21, 2004) ("Based on the best available scientific information, we do not believe the species is on the brink of extinction at this time and does not meet the definition of endangered under the Act."). However, this appears to be an offhand comment and the decision does not indicate that it is attaching any particular

---

12. The Court notes that Defendants do not represent that this interpretation is legally binding. (Doc. 40 at 14 (describing the Polar Bear Memorandum "as a resource containing helpful analysis and examples (as opposed to a legally binding codification of an agency interpretation").)

weight to this phrase. Based upon this authority, the Court finds that the FWS has failed to consistently apply "on the brink of extinction" to mean "in danger of extinction." This factor cuts against giving any great weight to the FWS's "on the brink of extinction" interpretation.

Additionally, the FWS's December 2014 determination that the Cabinet–Yaak grizzly was not "on the brink of extinction" was announced in a one paragraph decision that contained no reasoning supporting this interpretation of "endangered." Further, this interpretation was not thorough and failed to reflect any collective deliberation by the agency before it was adopted. Based upon these factors, the Court finds that the FWS's "on the brink of extinction" interpretation should be afforded little to no deference. Consequently, the Court will next decide if application of this interpretation violated the APA's requirement that an agency provide a reasoned explanation for a change in its policy.

### 3. Change in Policy

■■■ The Court first notes that Defendants dispute the fact that its application of the Polar Bear Rule equates to a change in policy. As mentioned above, Defendants suggest that the Polar Bear Memorandum was merely a document that provided guidance to the FWS and was not meant to be a binding interpretation of the statutory phrase "in danger of extinction." The evidence before the Court is to the contrary.

As discussed, from January 2014 until June 2014, documents within the administrative record uniformly recognized that the Cabinet–Yaak grizzly was warranted for listing as endangered species. Prior to July 2014, all Montana FWS biologists and employees recognized that, though there was a slight improvement in the bear's recovery which would warrant a slight revision of the bear's LPN from 3 to 6, the

bear still qualified for uplisting as an endangered species. (Doc. 21 at 29–33 (summarizing the administrative record).) These opinions were also reflected in the draft species assessments which concluded that the bear's LPN should changed from 3 to 6.

However, in July 2014, following a FWS administrator's directive to apply the Polar Bear Memorandum's interpretation of "in danger of extinction" to the Cabinet–Yaak population's listing designation, the recommendations of FWS staff abruptly changed. Indeed, the record reflects that following a conversation between a FWS biologist and a FWS administrator, the agency began to implement the interpretation of "in danger of extinction" as announced in the Polar Bear Memorandum. *See* AR–35:000592–000594 (describing how the Polar Bear Memorandum announced a new agency "policy" in regards to the statutory phrase "in danger of extinction" and how the FWS was now interpreting that phrase to mean "currently on the brink of extinction in the wild"). Even if the Court disregarded the fact that an FWS employee referred to this interpretation as a "new policy," the agency's actions reflect that it indeed was implementing a new policy. The Court thus rejects Defendants' argument that implementation of the Polar Bear Rule was not a change in agency policy.

■■■ As discussed above, the APA directs a court to "hold unlawful and set aside agency action, findings, and conclusions found to be—(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). " 'Unexplained inconsistency' between agency actions is 'a reason for holding an interpretation to be an arbitrary and capricious change.' " *Organized Village of Kake v. U.S. Dept. of Agric.*, 795 F.3d 956, 966 (9th Cir. 2015) (quoting *Nat'l*

*Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005)). "[A] policy change complies with the APA if the agency (1) displays awareness that it is changing position, (2) shows that the new policy is permissible under the statute, (3) believes the new policy is better, and (4) provides good reasons for the new policy, which, if the new policy rests upon factual findings that contradict those which underlay its prior policy, must include a reasoned explanation for disregarding facts and circumstances that underlay or were engendered by the prior policy." *Organized Village of Kake*, 795 F.3d at 966 (citing *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515–516, 129 S.Ct. 1800, 173 L.Ed.2d 738 (2009)) (internal punctuation and quotation marks omitted).

Here, the December 2014 Cabinet–Yaak grizzly listing determination failed to recognize that it was applying the new policy announced in the Polar Bear Memorandum. Even if one were to argue that the agency displayed awareness that it was changing its policy through the emails between the FWS biologist and FWS administrator, the agency failed to publically announce this change. Further, there is no evidence in the administrative record or in the December 2014 listing determination to suggest that the agency found that the change in policy was permissible under the ESA, believed that the new policy was better than the agency's prior interpretations, or otherwise provided a good reason for the change. Accordingly, due to the failure of the FWS to provide a reasonable explanation for why it modified its interpretation of "in danger of extinction" to mean "on the brink of extinction," the Court finds that the December 2014 not warranted determination was an arbitrary and capricious decision in violation of the

APA.[13] Based upon this finding, the Court will grant Alliance's motion for summary judgment, and deny the cross-motions for summary judgment of Defendants and Defendant-Intervenors.

#### 4. Remedy

▇▇▇ When an agency action is not promulgated in compliance with the APA, the action is deemed to be invalid. *Organized Village of Kake*, 795 F.3d at 970; *see also Paulsen v. Daniels*, 413 F.3d 999, 1008 (9th Cir. 2005) ("The effect of invalidating an agency rule is to reinstate the rule previously in force."). Further, upon remand, a court should provide the agency with specific instructions to address its errors. *Friends of Wild Swan v. U.S. Envtl. Protec. Agency*, 74 Fed.Appx. 718, 722 (9th Cir. 2003) (unpublished) ("We have previously found remand with specific instructions to be an appropriate remedy for APA violations.").

▇▇▇ Here, because the Court's finds that the FWS's December 2014 not warranted determination was arbitrary and capricious because it failed to explain a change in agency policy as it relates to the ESA's definition of "endangered," the Court will vacate this determination and reinstate the FWS's November 2013 warranted but precluded finding. *See* 78 Fed. Reg. 70104, 70151 (November 22, 2013). Additionally, if the FWS intends to apply the Polar Bear Rule in future listing decisions, i.e., the "on the brink of extinction" interpretation of "in danger of extinction," the Court remands with instructions to: (1) display an awareness that it is now applying this interpretation as applied to the ESA; (2) show that this new interpretation is permissible under the ESA, (3) explain why this new interpretation is bet-

---

**13.** Because the Court will grant Alliance's motion and remand for further proceedings on this issue, it declines to address Alliance's remaining arguments.

ter; and (4) provide a reasoned explanation for what this interpretation means.

Accordingly, IT IS ORDERED that

(1) Plaintiff's Motion to Supplement the Record (Doc. 16) is GRANTED IN PART and DENIED IN PART in accordance with the above Order;

(2) Plaintiff's Motion for Summary Judgment (Doc. 19) is GRANTED;

(3) Federal Defendant's Cross–Motion for Summary Judgment (Doc. 28) is DENIED;

(4) Defendant–Intervenors' Cross–Motion for Summary Judgment (Doc. 33) is DENIED;

(5) The United States Fish & Wildlife Service's December 5, 2014 determination that the Cabinet–Yaak grizzly bear is not warranted for listing as an endangered species under the Endangered Species Act, 79 Fed. Reg. 72450, 72488 (December 5, 2014), is hereby VACATED; and

(5) This matter is REMANDED to the United States Fish & Wildlife Service for further consideration consistent with this order.

DATED this 22nd day of August, 2017.